197 F.3d 13 (1st Cir. 1999)
 IN RE: INDEPENDENT ENGINEERING COMPANY, INC., Debtor,
THOMAS MILLER, ESQ., Appellant,
v.
U.S. TRUSTEE, ALFRED J. PETERSON, AMERICAN ELGIN, INDEPENDENT ENGINEERING COMPANY, INC., U.S. TRUSTEE, Appellees.
 No. 99-9004
 United States Court of Appeals for the First Circuit
 Heard Oct. 4, 1999.
Decided November 30, 1999.
 
 APPEAL FROM THE BANKRUPTCY APPELLATE PANEL OF THE FIRST CIRCUIT.
 Thomas Miller, with whom Miller Law Office was on brief, for appellant.
 John P. Fitzgerald, III, Assistant United States Trustee, with whom Gary L. Donahue, Attorney Advisor, United States Department of Justice, was on brief, for appellee.
 Before Boudin, Circuit Judge, Bownes, Senior Circuit Judge, and Stahl, Circuit Judge.
 Stahl, Circuit Judge.
 
 
 1
 Thomas Miller appeals from a decision of the Bankruptcy Appellate Panel ("BAP") for the First Circuit. That decision affirmed an order of the United States Bankruptcy Court for the District of Massachusetts (the "bankruptcy court"), disqualifying Miller from serving as counsel for Independent Engineering Company, Inc. (the "Debtor"), and requiring him to return all fees and retainers to the Debtor. For the reasons set forth below, we affirm.
 
 I.
 Background
 
 2
 We draw the facts of this case, which are not in dispute, from the opinion of the BAP:
 
 
 3
 On September 29, 1993, the Debtor, Independent Engineering Company, Inc., filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et. seq. On that same date, the Debtor filed a Motion to Employ Thomas Miller as counsel, a supporting affidavit and a "Statement pursuant to Rule 2016(b)." At that time, Miller's affidavit and rule 2016 Statement reflected that the source of the $10,000 retainer [for Miller's services] was the company's president, Al Peterson. The initial application, affidavit and rule 2016 statement did not set forth the terms of the engagement or the fee agreement between the Debtor and Miller.
 
 
 4
 . . . .
 
 
 5
 On October 27, 1993, the Debtor filed an amended motion to employ counsel that incorporated a copy of a fee agreement by and between the Debtor, Miller, and Peterson. (footnote omitted.) Paragraph 2 of the fee agreement stated that "[Miller's] Firm will be paid $10,000 as a security deposit retainer." Paragraph 6 provided for monthly billing against the retainer, with the retainer to be replenished by the Debtor. [Paragraph 4 provided for any balance remaining in the retainer to be "refunded to the Client," designated by Paragraph 1 as Independent Engineering Company, Inc. The fee agreement also indicated that the source of the retainer, Alfred Peterson, was designated as a third party guarantor and "not [a] client[] of the Firm."]
 
 
 6
 . . . .
 
 
 7
 On October 29, 1993, the [Bankruptcy] Court endorsed the amended motion to employ as follows: "Application approved. Notwithstanding paragraph 6 of the attached agreement, all compensation shall be subject to approval by the court upon appropriate application. /s/Joan N. Feeney."
 
 
 8
 . . . .
 
 
 9
 On December 2, 1993, Miller filed his First Amendment to the Rule 2016(b) Statement wherein he disclosed for the first time that he had taken draws against the retainer and had received post-petition payments from the Debtor as follows:
 
 
 10
 Oct. 9, 1993: $3,007.80 (billed against retainer)
 
 
 11
 Oct. 29, 1993: $3,007.80 (post-petition payment by the Debtor)
 
 
 12
 Nov. 30, 1993: $4,612.80 ($3,088.68 billed against retainer)
 
 
 13
 As of December 2, 1993, Miller had filed no fee applications. The Court had approved no fees; it had authorized no payments. In response to Miller's December 2 disclosure, the Court ordered him to file an interim fee application[, which Miller did on January 7, 1994]. . . . The United States Trustee objected [on February 3, 1994 to Miller's First Interim Fee Application and filed a Motion to Vacate Miller's employment, based on Miller's lack of disinterestedness]. After a hearing [on February 15, 1994], the bankruptcy court entered its order vacating the October 29, 1993 endorsed order approving Miller as counsel and further ordered Miller to disgorge all retainers and fees.
 
 
 14
 The bankruptcy court instructed the Debtor to obtain new counsel by March 2, 1994. Miller, who did not request reinstatement, appeals the bankruptcy court's ruling insofar as it required him to disgorge his fees and retainer.
 
 II.
 Standard of Review
 
 15
 We review a bankruptcy court's findings of fact for clear error and examine its conclusions of law de novo. See Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop), 50 F.3d 72, 73 (1st Cir. 1995). The bankruptcy court's interpretation of the Bankruptcy Code presents a question of law. See id. The application of the code to a particular case poses a mixed question of law and fact, which is subject to review for clear error unless the bankruptcy court's analysis was infected by legal error or based on a mistaken impression of applicable legal principles. See Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. 1993); see also Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 855 n.15 (1982); In re Winthrop, 50 F.3d at 73.
 
 III.
 Discussion
 
 16
 Miller contends that the BAP erred in upholding the order of the bankruptcy judge because, when he drew against his client's retainer, the lawfulness of his conduct was unclear. On appeal, Miller claims that: he was disinterested, he was not required to obtain prior judicial approval for withdrawals from the retainer because it was not property of the estate, his fee agreement permitted replenishment of the retainer by the Debtor, and the bankruptcy court's order was ambiguous.
 
 
 17
 Relying upon In re Printcrafters, Inc., 233 B.R. 113, 120 (D. Colo. 1999), a case in which counsel who had drawn on a retainer prior to the filing of a bankruptcy petition was nevertheless found to be "disinterested," Miller argues that his draws were not necessarily proscribed as a matter of law. Unlike the attorney in Printcrafters, however, Miller not only drew on a pre-petition retainer but also failed to disclose that fact in his amended motion for employment or in any accompanying statements to the bankruptcy court.[1]
 
 
 18
 Miller also attempts to justify his failure to submit a timely fee application for either of his first two withdrawals by citing cases suggesting that prior judicial approval is not required for draws on retainers not the property of the estate. See In re McDonald Bros. Constr., Inc., 114 B.R. 989, 994 (Bankr. N.D. Ill. 1990); Indian Motocycle Assocs. III Ltd. Partnership v. Massachusetts Hous. Auth., 66 F.3d 1246, 1254 (1st Cir. 1995). We need not reach this question because the fee agreement itself provided for any balance of the retainer to be "refunded to the client," in this case, the Debtor.
 
 
 19
 But even if the cases permitting certain withdrawals from retainers without prior judicial approval were on all fours with this case, notice to parties in interest, a hearing, and judicial approval are required when counsel seeks compensation from the debtor's estate. See 11 U.S.C. §§ 330(a), 331; In re Chapel Gate Apartments, Ltd., 64 B.R. 569, 575 (Bankr. N.D. Tex. 1986) (holding that "fees in bankruptcy cases . . . are subject to review, modification, and outright cancellation by the Court"). Moreover, the fact remains that Miller ignored an order of the bankruptcy court requiring him to obtain prior judicial approval for any compensation he was to receive notwithstanding that paragraph 6 of the fee agreement purported to allow him to bill and collect additional reimbursement directly from the debtor. This order was, of course, entirely lawful, see 11 U.S.C. §§ 328(c), 329(a), 330(a)(1)(A) & (B), 331; In re Martin, 817 F.2d at 180; In re Chapel Gate Apartments, Ltd., 64 B.R. at 575, and Miller's violation of it properly subjected him to sanctions,[2] see 11 U.S.C. §§ 328(c), 329(b); In re Martin, 817 F.2d at 182-183 (observing that the failure to disclose a fee arrangement can provide grounds for the disqualification of debtor's counsel and the disgorgement of fees); see also Rome v. Braunstein, 19 F.3d 54, 58, 62 (1st Cir. 1994); Smith v. Marshall (In re Hot Tin Roof, Inc.), 205 B.R. 1000, 1003-04 (B.A.P. 1st Cir. 1997); In re Saturley, 131 B.R. 509, 517 (Bankr. D. Me. 1991).[3]
 
 
 20
 Miller also argues that even if he properly was subject to sanctions, the total disgorgement of his retainer and fees constituted an abuse of the bankruptcy court's discretion. We disagree. Bankruptcy courts historically have been accorded wide discretion to oversee the terms and conditions of a debtor's engagement of professionals because "[t]he bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." In re Martin, 817 F.2d at 182. Section 327(a) authorizes an estate trustee or a debtor in possession to employ "disinterested" professionals who "do not hold or represent an interest adverse to the estate." 11 U.S.C. § 327(a); see also id. § 328(c) (allowing courts to deny compensation and reimbursement to such professionals).
 
 
 21
 Section 329 requires debtor's counsel to disclose to the court the amount and the source of any compensation that counsel has received, or expects to receive, from the client for the year that preceded the bankruptcy petition. See 11 U.S.C. § 329. Professionals employed in bankruptcy cases are subject to "particularly rigorous conflict-of-interest restraints," Rome, 19 F.3d at 57, whereby they must not evidence "even [an] appearance of impropriety," id. at 58 (internal quotation marks and citation omitted). The bankruptcy court has continuing authority to revisit an order employing a particular attorney to represent a debtor. See 11 U.S.C. § 328(c); see also Rome, 19 F.3d at 58; In re Hot Tin Roof, Inc., 205 B.R. at 1003. Every potential conflict must be disclosed, and upon finding that counsel has failed to comply, the bankruptcy judge can impose various remedies, including disqualification of counsel and the denial of fees. See In re Martin, 817 F.2d at 182-83; see also In re Chapel Gate Apartments, Ltd., 64 B.R. at 575 (holding that fees can be denied even where the failure to disclose results from negligence rather than from design).
 
 
 22
 By failing to timely disclose and secure prior judicial approval of withdrawals from the pre-petition retainer and subsequent replenishment by the Debtor, Miller flouted a lawful order of the bankruptcy court and thereby frustrated its ability to oversee the bankruptcy proceedings. On these facts, we cannot say that the bankruptcy court's decision was clearly erroneous.
 
 
 23
 Affirmed. Costs to appellees.
 
 
 
 Notes:
 
 
 [1]
 Disclosure is required by the Bankruptcy Code and rules. See In re Martin, 817 F.2d 175, 182 (1st Cir. 1987) (holding that an attorney's application for fees in representing a Chapter 11 debtor must contain "at a minimum[,] full and timely disclosure of the details of any given arrangement"). Judge Feeney explicitly required disclosure in her order. See Casco Northern Bank v. DN Assocs. (In re DN Assocs.), 3 F.3d 512, 526 (1st Cir. 1993) (concluding that in the face of late or inadequate disclosures, the bankruptcy court was free to find that counsel had a disabling conflict of interest).
 
 
 [2]
 Miller made his first draw from the retainer before Judge Feeney had issued the disclosure order. But, Miller failed to disclose that withdrawal even after the order had issued, and in so doing, violated the terms of the judge's command.
 
 
 [3]
 Miller says that he did not understand the court's order as requiring prior judicial approval of draws against the retainer; but whatever his subjective understanding, we think the court's order was unambiguous when read in context of the Bankruptcy Code and rules.