**MITSUBISHI MOTOR SALES OF CARIBBEAN, INC.,**
Appellant,

v.

**Norberto SEDA ORTIZ, Appellee.**

**Civil No. 07–1643 (DRD).**

United States District Court,
D. Puerto Rico.

Sept. 30, 2009.

Carlos E. Rodriguez–Quesada, Carlos E. Rodriguez Quesada Law Office, San Juan, PR, for Appellant.

Wigberto Lugo–Mender, Lugo Mender & Co., Guaynabo, PR, for Appellee.

## OPINION AND ORDER DISMISSING APPEAL

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is an appeal filed by Mitsubishi Motor Sales of Caribbean, Inc. ("Mitsubishi") against debtor Norberto Seda Ortiz ("Seda"), wherein Mitsubishi challenges several orders, as well as a judgment entered by the Hon. Enrique S. Lamoutte, U.S. Bankruptcy Judge, U.S. Bankruptcy Court for the District of Puerto Rico, to wit: (a) *Order of*

*Discharge* entered in Case No. 02–11182(ESL) (Docket No. 246); (b) *Judgment* entered on December 18, 2006, in Adversary Proceeding No. 03–0060(ESL) (Docket No. 82); and (c) *Order* entered in Adversary Proceeding No. 03–0060(ESL) (Docket No. 92). For the reasons set forth below, the instant appeal is dismissed, and the judgment entered by the bankruptcy court in Adversary Proceeding No. 03–0060 is affirmed.[1]

### Jurisdiction

This Court has jurisdiction to entertain bankruptcy appeals pursuant to 28 U.S.C. § 158(a)(1).

### Standard of Review

■■■ On appeal, the district court reviews rulings of law *de novo* and findings of fact for clear error. *Stornawaye Financial Corporation v. Hill (In re Hill)*, 562 F.3d 29, 32 (1st Cir.2009) ("[W]e concentrate on the bankruptcy court's decision, reviewing its findings of fact for clear error and its conclusions of law de novo"); *Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1, 3 (1st Cir.1998); *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir.1995). "Under an abuse of discretion standard, a reviewing court cannot reverse unless it has a 'definite and firm conviction that the court below committed a clear error of judgment' in the conclusion it reached upon a weighing of the relevant factors." *In re Hosseinpour–Esfahani, et al. (Taylor v. Hosseinpour–Esfahani)*, 198 B.R. 574, 577 (9th Cir. BAP 1996), citing *Marchand v. Mercy Medical Ctr.*, 22 F.3d 933, 936 (9th Cir.1994). "Evidentiary rulings by the bankruptcy court are subject to the 'abuse of discretion' standard." *Williamson v. Busconi*, 87 F.3d 602, 603, n. 4 (1st

---

1. The instant case was referred to the undersigned from the Clerk of the Court on December 7, 2007 (Docket No. 9).

Cir.1996), citing *United States v. Cotto–Aponte,* 30 F.3d 4, 6 (1st Cir.1994).

"The standard of review on this appeal requires that we respect, unless 'clearly erroneous,' all findings of fact by the bankruptcy court, which includes any finding of actual reliance and any raw fact findings pertinent to the issue of justifiable reliance. *Brandt v. Repco Printers & Lithographics, Inc.,* 132 F.3d 104, 107–08 (1st Cir.1997)." *In re Spadoni,* 316 F.3d 56, 58 (1st Cir.2003). "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard . . . to the opportunity of the bankruptcy court to judge the credibility of the witnesses. (Citations omitted)." *Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997).

"A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is 'left with the definite and firm conviction that a mistake has been committed.' " *Palmacci,* 121 F.3d at 785, citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.' " *Id.,* citing *In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992). "Particular deference is also due to the trial court's findings that depend on the credibility of other witnesses and on the weight to be accorded to such testimony." *Id.,* citing Fed.R.Bank.R. 8013; *Keller v. United States,* 38 F.3d 16, 25 (1st Cir. 1994).

Moreover, when the parties do not contest the findings of fact made by the bankruptcy court, the appeals court will not disturb them. *In re Joelson,* 427 F.3d

700, 702 (10th Cir.2005) ("Because the parties do not specifically contest the bankruptcy court's findings of fact, the court will not disturb this ruling on appeal"), citing *Jenkins v. Hodes (In re Hodes),* 287 B.R. 561, 570 (D.Kan.2002), *aff'd,* 402 F.3d 1005 (10th Cir.2005).

Lastly, when the bankruptcy court's interpretation of the Bankruptcy Code is in question, then we have a question of law. "The application of the code to a particular case poses a mixed question of law and fact, **which is subject to review for clear error unless the bankruptcy court's analysis was infected by legal error or based on a mistaken impression of applicable legal principles.**" (Emphasis ours). *Miller v. Peterson (In re Independent Engineering Company, Inc.),* 197 F.3d 13, 16 (1st Cir.1999), citing *Williams v. Poulos,* 11 F.3d 271, 278 (1st Cir.1993); *see also Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 855 n. 15, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). "Mixed questions of law and fact are reviewed 'along a degree-of-deference continuum, ranging from plenary review for law-dominated questions to clear-error review for fact-dominated questions.' " *Adams Co–Operative Bank v. Greenberg (In re Greenberg),* 229 B.R. 544, 546 (1st Cir. BAP 1999), citing *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1132 (1st Cir.1995); *Accord Servicios Comerciales Andinos, S.A. v. General Electric Del Caribe, Inc.,* 145 F.3d 463, 469 (1st Cir.1998); *Inmates of Suffolk County Jail v. Rouse,* 129 F.3d 649, 661 (1st Cir.1997).

In the instant appeal, Mitsubishi contests only the bankruptcy court's *Order* declining to adopt certain proposed amended findings of fact, as well as the *Judgment* of non-dischargeability of the debt. *See Appellant's Brief* (Docket No. 4, page 4).

## Issue

The questions before the Court are: (a) whether the bankruptcy court erred when it determined that Mitsubishi's debt is dischargeable; and (b) whether the bankruptcy court erred when it declined to adopt certain proposed additional findings of fact.

### Factual and Procedural Background

On November 2, 2006, the bankruptcy court entered an *Opinion and Order* (Docket No. 79 of Adv. Proc. No. 03–0060) ("Docket No. 79"). Upon Mitsubishi's request, the bankruptcy court made additional findings of fact, but declined to adopt others proposed by Mitsubishi. *See Order* of March 30, 2007 (Docket No. 92 of Adv. Proc. No. 03–0060) ("Docket No. 92").

In the instant appeal, Mitsubishi is only contesting the *Order* of the bankruptcy court declining to adopt the proposed additional facts, and the reasons set forth therein (Docket No. 92). Hence, the Court will describe the factual background based upon the bankruptcy court's uncontested findings, which will not be disturbed on this appeal. *See In re Joelson,* 427 F.3d 700.

In a nutshell, Mr. Seda, is the President, majority stockholder and personal guarantor of Lunor, Inc. ("Lunor"), a corporation organized under the laws of the Commonwealth of Puerto Rico. Lunor is a corporation that was engaged in the direct sales of vehicles to consumers of the make Mitsubishi and Hyundai, as well as vehicles' parts and accessories. Mr. Seda and his wife "are stockholders of Lunor and personal guarantors of the debts acquired by Lunor in the purchase orders object of this [adversary] proceeding. As per the express terms and conditions of the credit and/or security agreements object of the instant adversary proceeding, each individual motor vehicle sold to the corporate entity, Lunor, Inc., pursuant to same, constituted part of the collateral of the ensued debt." *Opinion and Order* (Docket No. 79, ¶ 3). "Mitsubishi and Lunor executed a Servicing Dealer Agreement in which Mitsubishi appointed Lunor as a non-exclusive dealer for the sale of Mitsubishi vehicles, parts and accessories." *Opinion and Order* (Docket No. 79, ¶ 8). "Lunor and its stockholders represented to Mitsubishi that they had the means and intention to pay for all the units sold under the security agreements and that they would honor the guarantees, as agreed." *Opinion and Order* (Docket No. 79, ¶ 10). "Lunor was granted the possession of the vehicles for their sale for the benefit of secured grantor Mitsubishi." *Opinion and Order* (Docket No. 79, ¶ 12). Lunor is an inactive corporation, and close to be dissolved, at the time the bankruptcy court entered its *Opinion and Order,* ¶¶ 4, 5 (Docket No. 79).

On October 21, 2002, Seda and his wife filed for voluntary relief under Chapter 11 of the Bankruptcy Code, after the business relationship between debtors and Mitsubishi turned sour due to several factors, such as, poor administration of the business; interoffice loans; the issuance of bad checks; and, Seda's sudden interest in the insurance business.

As of June 2001, Lunor's out of trust sales' debt was approximately $1.5 million. Mitsubishi tried to work out a repayment plan with the owners of Lunor to no avail, as the collaterals offered by Lunor had no equity. As of March 2006, the out of trust sales'[2] debt well exceeded the $2 million amount.

---

**2.** "[A] dealer sells a car 'out of trust' when he sells it and then fails to remit the proceeds to his lender under the floorplan financing agreement." *Mannheim Automotive Financial Services, Inc. v. Park (In re Park),* 314 B.R. 378, 382 (Bankr.N.D.Ill.2004). In sum,

On April 16, 2003, an adversary proceeding was filed by Mitsubishi against debtors, Norberto Seda and Myrna Olmo-Velázquez, Adv. Proc. No. 03–0060, requesting that its debt in the amount of $2,006,660.97, be exempted from discharge, as provided by 11 U.S.C. § 523(a)(2)(A) for obtaining money or credit by false pretenses and representations; 523(a)(2)(B) for obtaining money or credit through a written statement that is materially false; 523(a)(4) for fraud, and 523(a)(6) for willful and malicious injury to Mitsubishi's property and security interest. *Opinion and Order* (Docket No. 79). Section 523 of the Bankruptcy Code governs the exceptions to discharge. Upon the conclusion of the presentation of evidence, the bankruptcy court dismissed the action as to Mr. Seda's wife, Myrna Olmo Velázquez, for no evidence was presented as to her. *Opinion and Order* (Docket No. 79).

The bankruptcy court, after a thorough analysis of the evidence presented, and a well developed opinion denied Mitsubishi's request to declare its debt in the amount of $2,006,660.97 as non-dischargeable. *Opinion and Order* (Docket No. 79).

The bankruptcy court concluded that "[t]he preponderance of the evidence does not show that Mr. Seda intended to cause injury to Mitsubishi." *Id.* "The evidence shows that the corporation, Lunor, through its officers/shareholders, breached the financial agreement and caused substantial economic harm to Mitsubishi." *Opinion and Order* (Docket No. 79). "However, this mismanagement does not warrant that the corporate debt be deemed non-dischargeable as to Mr. Seda." *Opinion and Order* (Docket No. 79).

The Court proceeds to analyze whether Mitsubishi's debt is non-dischargeable.

**Applicable Law and Discussion**

Section 523 of the Bankruptcy Code governs the exceptions to discharge. Section 523(a)(2) provides in its relevant part:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; or

. . .

(3) . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(5) . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

"Exceptions to discharge are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start' policy,' and, for that reason, the claimant must show that his 'claim comes squarely within an exception enumerated in Bankruptcy

---

when the dealer sells a car out of trust means that it has defaulted the floorplan line of credit under the financing security agreement.

18

Code § 523(a).'" *Palmacci,* 121 F.3d at 786, citing *Century 21 Balfour Real Estate v. Menna,* 16 F.3d 7, 9 (1st Cir.1994); *see In re Bajgar,* 104 F.3d at 498 n. 1. "The statutory requirements for a discharge are 'construed liberally in favor of the debtor' and '[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural.'" *Palmacci,* 121 F.3d at 786, citing *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987). Each element of 11 U.S.C. § 523 must be proved under the standard of preponderance of the evidence. *Palmacci,* 121 F.3d at 787. "The burden of proof and the burden of production as to each element rests with the party contesting the dischargeability of a particular debt under the Bankruptcy Code § 523." *Id.*

## A. 11 U.S.C. § 523(a)(2)(A).

■ The bankruptcy court set forth the elements that Mitsubishi must prove in order to show the non-dischargeability of its debt under 11 U.S.C. § 523(a)(2)(A) for actual fraud, false pretenses or false statements:

"1. The debtor made a knowingly false representation or one made in reckless disregard of the truth;

2. The debtor intended to deceive;

3. The debtor intended to induce the creditor to rely upon the false statement;

4. The creditor actually relied upon the misrepresentation;

5. The creditor's reliance was justifiable; and

6. The reliance upon the false statement caused damage."

*Opinion and Order* (Docket No. 79), citing *Gem Ravioli, Inc. v. Creta,* 271 B.R. 214, 217 (1st Cir. BAP 2002). In *Palmacci,* the Court held that, "'[a] finding of fact that a debt is non-dischargeable under 523(a)(2)(A) requires a showing of *actual* or positive fraud, not merely fraud *implied by law.*'" 121 F.3d at 789, citing *Anastas v. American Sav. Bank (In re Anastas),* 94 F.3d 1280, 1286 & n. 3 (9th Cir.1996). "The determination of whether a debt is excepted from discharge under this category depends upon whether money, property or services, or an extension, renewal or refinancing of credit has been obtained, the character of the property, services or extension, renewal or refinancing of credit, and the character of the false pretenses or representation or actual fraud." 4 Alan N. Resnick & Henry J. Sommer, *Collier On Bankruptcy* ¶ 523.08[1][a] (15th Edition Rev.). "Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive." 4 *Collier On Bankruptcy* ¶ 523.08[1][a]. *Collier On Bankruptcy* ¶ 523.08[1][d] further states:

Similarly, a purchase of goods on credit by a debtor who does not intend to pay for them is a false representation. **A creditor alleging fraud bears the burden of proving that the debtor knew full well that any professed intention to repay was false or was known by the debtor not to be well grounded, and that the debtor nevertheless deliberately obtained goods knowing they were beyond his or her ability to pay. The debtor's insolvency or inability to pay does not by itself provide a sufficient basis for inferring the debtor's intent. A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent.** (Emphasis ours).

As to actual fraud, *Collier On Bankruptcy* ¶ 523.08[1][e] states:

Section 523(a)(2) covers "actual fraud" as well as false pretenses and representations.

Actual fraud, by definition, consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception. The concealment of material facts by a fiduciary may also be fraud.

*See also Backlund v. Stanley–Snow (In re Stanley–Snow)*, 405 B.R. 11 (1st Cir. BAP 2009).

"As direct evidence is seldom available, fraudulent intent normally is determined from the totality of the circumstances." *Williamson v. Busconi*, 87 F.3d 602, 603 (1st Cir.1996), citing *Charlie Kelton's Pontiac, Cadillac, Oldsmobile & Isuzu Truck, Inc. v. Roberts (In re Roberts)*, 82 B.R. 179, 184 (Bankr.D.Mass. 1987).

The Court, however, will make reference to certain uncontested findings of fact made by the bankruptcy court after having examined the evidence submitted at trial. These findings are of the essence to determine whether Mr. Seda indeed incurred in actual fraud, with the intent to deceive Mitsubishi. For purposes of this appeal, the Court finds that the findings of fact made by the bankruptcy court in its *Opinion and Order* (Docket No. 79), are uncontested, hence, will not be disturbed. A review of Mitsubishi's appeal brief shows that the references to the findings of fact made by the bankruptcy court stem from documental information of easy verification, such as the data pertaining to Lunor, Inc. The Court also finds that the allegations as to whether Mr. Seda knew or should have known, are findings best left to the bankruptcy court, who is the trier of the facts, and this Court is not inclined to disturb them.

Lastly, after a review of Mitsubishi's complaint filed in Adv. Proc. No. 03–0060, and the appellant's brief, the Court finds that the arguments are a rehashing of the averments pled in the complaint. The Court briefly explains.

A review of the record shows that the most that Mitsubishi was able to prove to the bankruptcy court, by preponderance of evidence, was that: (a) Lunor was a mismanaged corporation; (b) Mr. Seda's main interest was his insurance business, as opposed to car sales; and (c) Mr. Seda has no knowledge of the transparency of the Lunor's transactions. Mitsubishi, however, failed to come forward with direct or sufficient circumstantial evidence as to the intent to deceive and/or defraud of Mr. Seda, as guarantor and stockholder of Lunor, Inc. In sum, Mitsubishi was unable to show, by preponderance of evidence, Mr. Seda knew or "should have known" that certain corporate transactions were made with the sole intention to deceive and/or defraud Mitsubishi. Lastly, and most critical, Mitsubishi failed to show that a fiduciary relationship existed between Mitsubishi and Mr. Seda, being Mr. Seda the president and personal guarantor of Lunor, Inc.

The Court notes that Mitsubishi designated Ms. Marta Roque, a certified public accountant and Accounting Director for Mitsubishi to supervise the accounts receivable of Lunor. *See Opinion and Order* (Docket No. 79, ¶ 13). The record further shows that Mr. Seda became the President and majority stockholder of Lunor, Inc., on or about March 2000, however, the facts show that Lunor was having cash flow problems since 1999. *See Order* (Docket No. 92, re: Docket Entries No. 84, 99). Hence, Mitsubishi was aware of Lunor's financial situation, however, continued doing business with Lunor knowingly, and condoned the fact of the out of trust sales. Indeed, the facts show that Mitsubishi had knowledge of the financial condi-

tion of Lunor since 1999, that is, before Mr. Seda became President of Lunor on or March 2000. *See Order* (Docket No. 92).

"In November of 2000, there was a purchase of approximately $10,000,000 in units from Mitsubishi. According to Ms. Roque, Lunor was, at the time, a dealer in good standing." *See Opinion and Order* (Docket No. 79, ¶ 28). The record further shows that, notwithstanding the signs of Lunor's financial uncertainty, Mitsubishi accepted such a large order of new cars. *See* Transcript of August 3, 2006 (Docket No. 60–3, pages 437–438, Adv. Proc. No. 03–0060), and Exhibit B. "Checks totalling $350,000.00 were received [by Lunor] from Mitsubishi as incentives." *See Opinion and Order* (Docket No. 79, ¶ 28). "On April 16, 2001, an incentive paid by MMSC [Mitsubishi] to the corporate entity, Lunor, Inc., in the amount of $14,000.00, was distributed among the stockholders of said company." *See Order* (Docket No. 92, re: Docket No. 86).

The bankruptcy court found, however, that Mitsubishi waited until June 2001 to take action to collect its debt, when Ms. Roque found that "it was very difficult to meet with all the owners of Lunor and reach a final agreement for the repayment of approximately $1,500,000.00 owed on account of out of trust sales." *See Opinion and Order* (Docket No. 79, ¶ 16). In addition, it is uncontested that Lunor never objected to conduct audits by external auditors as requested by Mitsubishi, only to find out that by March 26, 2002, the debt due to the out of trust sales has reached the unsurmountable amount of $2,091,810.53. *See Opinion and Order* (Docket No. 79, ¶ 18). The facts also show that Ms. Edna Rodríguez, a Mitsubishi's collections supervisor testified as to the fact that "Lunor did not have good control of its inventory and accounting." *See Opinion and Order* (Docket No. 79, ¶ 19).

The same conclusion was reached by Ms. Lourdes Figueras, also a certified public accountant with experience in auditing car dealers. *See Opinion and Order* (Docket No. 79, ¶ 20). Both Ms. Rodríguez and Ms. Figueras met with Ms. Agnes Martínez from Lunor, Inc. during the auditing process. The same deficiencies in the corporate operations of Lunor were found by both accountants Ms. Rodriguez and Ms. Figueras. *See Opinion and Order* (Docket No. 79, ¶ 20). Ms. Figueras prepared a report, and the bankruptcy court found that "[t]he report findings are uncontested and corroborated by the deposition testimony of Mr. José Feliciano, comptroller of Lunor." *See Opinion and Order* (Docket No. 79, ¶ 21).

Even more impressive is the willingness of the President and CEO of Mitsubishi, Mr. Eduardo Mayoral Del Valle to continue doing business with Lunor, notwithstanding the disarray and deteriorated Lunor's financial situation, as well as the lack of possibility of repayment of the debt by Lunor, Inc. Mr. Del Valle "testified that he was concerned with Lunor's significant debt in out of trust sales, which was approximately $2,000,000.00. It was in the best interest of Mitsubishi to continue doing business with Lunor if they could pay the debt. Thus, they [Mitsubishi] engaged in negotiations for Lunor to continue doing business and repay the debt, insuring that Mitsubishi did not get into deeper problems. However, they [Lunor and Mitsubishi] were unable to agree on a final plan." *See Opinion and Order* (Docket No. 79, ¶ 22). Moreover, "Mr. Milton Sánchez Ramos, a shareholder and employee of Lunor, testified that it was known that Lunor was not paying Mitsubishi on time for sale of units." *See Opinion and Order* (Docket No. 79, ¶ 24).

The bankruptcy court found from the evidence presented that Mr. Seda envi-

sioned Lunor, Inc. as "his most important client," as Mr. Seda's main interest was the insurance business. *See Opinion and Order* (Docket No. 79, ¶ 25). The evidence further shows that Mr. Seda trusted Lunor's employees; that he was sort of disconnected from the daily operations of the corporate transactions; and, that "he did not examine the accounting books because he does not have the knowledge to do so." *See Opinion and Order* (Docket No. 79, ¶ 31). Mitsubishi, however, was unable to present any evidence to the contrary, that is, that Mr. Seda acted knowingly and with the fraudulent intent to deceive Mitsubishi through false statements. In sum, Mitsubishi failed to meet the requirements of 11 U.S.C. § 523(a)(2)(A), and (B), as Mitsubishi failed to present into evidence any written false statement prepared by Mr. Seda. Moreover, the evidence shows that Mr. Seda: (a) was "surprised" when confronted with the financial chaotic situation that the "sales out of trust exceeded $1,000,000.00;" (b) the "negotiations led to an agreement to repay the amount of $92,000.00 per month on the out of trust debt;" and, finally, (c) agreed to a payment plan, wherein only one payment was made due to the deteriorated finances. *See Opinion and Order* (Docket No. 79, ¶¶ 29–31). "The course of conduct between the parties after the out of trust sales were discovered shows that the parties engaged in negotiations aimed at reaching an agreement for the repayment of the debt and at the same time continued doing business." *Opinion and Order* (Docket No. 79, page 12).

In the instant case, we agree with the findings of fact made by the bankruptcy court, that based on the totality of the circumstances, the record fails to show fraudulent intent by Mr. Seda, as we cannot conclude that the facts are clearly erroneous, and the "bankruptcy court's analysis was [not] infected by legal error." *In re Independent Engineering Company, Inc.,* 197 F.3d at 16. The record is clear that Mitsubishi was unable to show that its debt should be excepted from discharge. At the very best, Mitsubishi proved Mr. Seda's mismanagement of Lunor, Inc., and that Lunor's payments were late, or payments were made with insufficient funds' checks. However, this evidence does not constitute direct evidence of fraudulent intent to cause harm to Mitsubishi. Mitsubishi was also unable to show to the Court one single document that may constitute a false statement provided by Mr. Seda to Mitsubishi that may constitute actual fraud. Likewise, Mitsubishi has failed to direct the bankruptcy court to any action from Mr. Seda that may be interpreted by the court as an act to intentionally deceit Mitsubishi.

Being the standard under 11 U.S.C. § 523(a)(2)(A) to be more "strictly construed against the creditor and in favor of the debtor," we agree with the bankruptcy court that the elements under this section were not proved by preponderance of the evidence by Mitsubishi. *American Express Travel Related Services, Co., Inc. v. Hernandez* (*In re Hernandez*), 195 B.R. 824, 828 (Bankr.D.P.R.1996), citing *In re Hunter,* 780 F.2d 1577 (11th Cir.1986); *In re Ward,* 88 B.R. 727, 728 (Bankr.W.D.Pa. 1988). "Moreover, the party opposing discharge, has the burden of persuasion." *Id.,* citing *In re Burgess,* 955 F.2d 134, 136 (1st Cir.1992). *See also Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998); *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Palmacci v. Umpierrez,* 121 F.3d 781; *Williamson v. Busconi,* 87 F.3d 602 (1st Cir.1996); *Collier On Bankruptcy* ¶ 523.08.

This Court is not persuaded by the evidence and arguments of Mitsubishi. The record is clear that Mitsubishi knew, since at least 1999, even before Mr. Seda became Lunor's President, of Lunor's financial disarray. Notwithstanding, Mitsubishi opted to carry on doing business with Lunor. Indeed, on or about November 1999, Mitsubishi sold to Lunor one of the largest car sales, "one sale of $11 million dollars," and it was done as an "ordinary sale, although it was maybe ten times more than any other one; the [Lunor's] **financial statements were not issued**...." *See* Transcript of August 3, 2006 (Docket No. 60–3, page 442, Adv. Proc. No. 03–0060). Hence, Mitsubishi has only itself to blame for such business decision.[3]

## B. 11 U.S.C. § 523(a)(2)(B).

As to the elements of 11 U.S.C. § 523(a)(2)(B), each "must be proved by a preponderance of the evidence." *Collier On Bankruptcy* ¶ 523.08[2].

Thus, a creditor must prove that the debt was obtained by the use of a statement

(1) in writing;

(2) that is materially false;

(3) respecting the debtor's or an insider's financial condition; on

(4) on which the creditor to whom the debtor is liable for money, property, services or credit reasonably relied;

(5) that the debtor caused to be made or published with intent to deceive.

In order to prove the elements of this section, the statement in question must be "in writing;" **must have been either written by the debtor, signed by the debtor, or written by someone else but adopted and used by the debtor.**" (Emphasis ours). *Collier On Bankruptcy* ¶ 523.08[2]. **"The requirement of a writing is a basic precondition to nondischargeability under section 523(a)(2)(B).**" (Emphasis ours). *Id. See also Mannheim Automotive Financial Services, Inc. v. Park (In re Park)*, 314 B.R. 378, 382 (Bankr.N.D.Ill.2004). The facts in *Park* are similar to the facts in the case at bar. Park, President of Auto Plaza, Inc., executed a security agreement guaranteed with a personal promissory note in favor of Automotive Financial Services, Inc. ("Automotive"). Park had a financing agreement guaranteed with the floorplan or a "floorplan line of credit." Automotive perfected its security interest with Auto Plaza's inventory, and the filing of financial statements with the proper agencies. Automotive alleges that Park sold certain automobiles but failed to send the funds to Automotive, and when indeed Park send the checks, the same were returned for insufficient funds. Automotive alleged that Park's financial statements and income tax returns were "false." Automotive filed an adversary proceeding to request that its debt be determined as nondischargeable, but the bankruptcy court declined and dismissed the complaint upon debtor's dismissal request under Rule 12(b)(6) of the Federal Rules of Civil

---

3. As to the proffered "kiting" practice with the units sold, and the breach to the security agreement by Lunor, Inc., Mitsubishi admitted to the Court that "Mitsubishi would not become aware that they were actually breaching the security agreement, because even though they [Lunor] were selling X unit on August, and they were not forwarding the proceeds of that specific unit at that time, Mitsubishi got paid two months afterwards with the proceeds from another unit." *See* Transcript of August 3, 2006 (Docket No. 60–3, pages 437–438, Adv. Proc. No. 03–0060). The fact is that Mitsubishi failed to take any action to correct this practice, and indeed continued doing business as usual, with Lunor and Mr. Seda. When the amount of the debt became unsurmountable, Mitsubishi even agreed to the possibility of a payment plan, which never materialized.

Procedure. In the instant case, the facts have surpassed the complaint stage, as a trial has already been held and judgment issued. **However, the principle is the same, that is, section 523(a)(2)(B) specifically requires the existence of a written false statement in order to except from discharge a debt.** Mere allegations or speculations are insufficient to meet the burden under section 523(a)(2)(B). *See also ITT Commercial Finance Corp. v. Walz*, 115 B.R. 353 (Bankr.N.D.Fla.1990) (discrepancies in values between the financial statement and schedules, do not warrant a denial of discharge). In *ITT, supra,* the Court held that creditor requesting the non-dischargeability of a debt must first show a loss of assets, and then the burden shifts to the debtor to explain said loss. "A satisfactory explanation requires the debtor to demonstrate good faith in the conduct of his affairs an in explaining the loss of assets." *ITT*, 115 B.R. at 357, citing *In re Cohen*, 47 B.R. 871 (Bankr. S.D.Fla.1985).

In the instant case, Mitsubishi was unable to prove that such false written statement ever existed. *See* Transcript of August 3, 2006 (Docket No. 60–3, pages 435–445, Adv. Proc. No. 03–0060). Hence, there is no need to examine whether the other factors of section 523(a)(2)(B) are met, as the first requirement was not met.

In view of the foregoing, after having reviewed *de novo* the record, the Court incorporates *in toto* the findings of fact and conclusions of law reached by the bankruptcy court, as they are well supported by the record, and by the applicable law.

### C. 11 U.S.C. § 523(a)(4).

▮ As to the elements of 11 U.S.C. § 523(a)(4), the bankruptcy court held that "[t]he non-dischargeability of the debt must be based on the debtor's actions, and not upon his status as a guarantor of the debt. *In re Tinkler,* 311 B.R. 869, 875 (Bankr.D.Colo.2004)." *See Opinion and Order* (Docket No. 79 at page 12).

In order to determine whether the elements of section 523(a)(4) are met, the creditor must establish that the parties were engaged in a fiduciary relationship, and the fraud or defalcation occurred while acting in a fiduciary capacity. The bankruptcy court found that no allegations or evidence to that effect were presented to the court. "The dispositive issue is whether debtor Norberto Seda, as President and shareholder of Lunor, as well as guarantor of the debt, was in a fiduciary capacity when the out of trust sales occurred." *Opinion and Order* (Docket No. 79, page 11). The bankruptcy court found that there was no fiduciary relationship amongst the parties, based on the evidence presented. The fact that there was a financing agreement and a floorplan or line of credit executed by Mitsubishi and Mr. Seda, cannot be considered as a fiduciary under the provisions of section 523(a)(4). "The course of conduct between the parties after the out of trust sales were discovered shows that the parties engaged in negotiations aimed at reaching an agreement for the repayment of the debt and at the same time continued doing business." *Opinion and Order* (Docket No. 79, page 12). The Court agrees and briefly explains.

▮ "The term 'fiduciary capacity' has consistently been limited in its application to apply only to what may be described as technical or express trusts, and not to trusts *ex maleficio* that may be imposed because of the very act of wrongdoing out of which the contested debt arose." *American Honda Finance Corporation v. Tester (In re Tester )*, 62 B.R. 486, 490–91 (Bankr.W.D.Va.1986) (citations omitted). "As the Supreme Court recognized in

*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 334, 55 S.Ct. 151, 79 L.Ed. 393 (1934), in concluding that **documents creating a floor-plan financing agreement did not create an express trust or fiduciary relationship, 'the resulting obligation is not turned into one arising from a trust because the parties to one of the documents has chosen to speak of it as a trust.' "** (Emphasis ours). *Tester, supra. See also Ford Motor Credit Company v. Gallaudet (In re Gallaudet),* 46 B.R. 918 (Bankr.D.Vermont 1985). *See also Rutanen, et al. v. Baylis (In re Baylis),* 313 F.3d 9, 18–19 (1st Cir.2002). Although in *Baylis, supra,* the Court found that there was clearly a fiduciary trust relationship between Baylis and plaintiffs, the Court thoroughly distinguished the elements of section 523(a)(4), and the showing required in order for a debt to be excepted from discharge.

> The present range of interpretations of "defalcation" among the circuits, from innocent mistake to a civil recklessness standard, does not, in our view, adequately capture Congress's intended meaning of the term in § 523(a)(4). Instead, we find that a defalcation requires some degree of fault, closer to fraud, without the necessity of meeting a strict specific intent requirement. Our view is based on both the structure of 11 U.S.C. § 523(a) and the "fresh start" policy.
>
> . . .
>
> We believe that defalcation lessens the threshold required from one of criminal or civil fraud to something less. To show defalcation, a creditor need not prove that a debtor acted knowingly or willfully, in the sense of specific intent.

> However, a creditor must be able to show that a debtor's actions were so egregious that they come close to the level that would be required to prove fraud, embezzlement, or larceny.
>
> . . .
>
> In evaluating whether there is a defalcation of a fiduciary duty, there must be reference to the duty involved.

In the case at bar, the bankruptcy court determined that there was no fiduciary relationship between Mitsubishi and Lunor, Inc., and Mr. Seda as personal guarantor of the dealership agreement executed by the parties on December 15, 1995, and as supplemented therein.[4] *See* Exhibit A, *Servicing Dealer Agreement* executed on December 15, 1995; Exhibits B–E *Financing Statements* corresponding to the credit lines granted to purchase several items, such as, automobiles, auto part, inventory, etc. The merchandise is fully described in the security agreement attached to the financing statement. *See also* Exhibit R, the letter of July 29, 2002 from Eduardo Mayoral, President and CEO of Mitsubishi Motors to Messrs. Norberto Seda; Luis F. Maldonado–Carbonell; José J. Feliciano Prieto; Milton Sánchez Ramos; Gustavo E. Guilbe Ortiz; Francisco J. Curet Rivera; and Santiago Parrilla Vázquez. A review of these documents show that the business relationship existing between Mitsubishi and Lunor, is a contractual relationship that stems from a non-exclusive dealership contract. From its origin until its termination, Mitsubishi always referred to this relationship as a contractual one. Hence, Mitsubishi cannot now allege that a fiduciary relationship

---

**4.** For example, on December 15, 1995, the amount of the floor plan was $750,000.00. *See* Exhibit A, "Operating Requirements Calendar year 1995." On November 30, 2000, a non-revolving line of credit in the amount of $10,619,900.00 was approved by Mitsubishi

to Lunor, Inc. *See* Exhibit B, Letter of November 30, 2000 from Mitsubishi to Mr. Gustavo E. Guilbe Ortiz, Manager of Lunor, Inc., and the security agreement attached thereto which included the inventory that constitutes the collateral of the line of credit.

existed, as it does not stem from the content of the agreement nor from their pattern of doing business. There is no document that states that Lunor, Inc. and Mr. Seda, will be operating the dealership on a fiduciary capacity. If a fiduciary relationship does not exist, then Mr. Seda does not have a fiduciary duty under the dealership contract, and the elements of section 523(a)(4) are inapplicable.

## D. 11 U.S.C. § 523(a)(6).

 The bankruptcy court held:

In order to prevail on a claim under section 523(a)(6) the creditor must establish willful and malicious conduct, not negligent and reckless conduct, that causes deliberate and intentional injury, and not a deliberate or intentional act that causes injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61–61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The evidence must show an intent to cause the harm. *In re Popa*, 214 B.R. 416, 421 (1st Cir. BAP 1997); *In re Mater*, 335 B.R. 264, 267 (Bankr.N.H.2005). The preponderance of the evidence does not show that Mr. Seda intended to cause injury to Mitsubishi. The evidence shows that the corporation, Lunor, through its officers/shareholders, breached the financial agreement and caused substantial economic harm to Mitsubishi.

*Opinion and Order* (Docket No. 79, pages 12–13). This Court agrees with the bankruptcy court, and briefly explains.

In *Baylis*, 313 F.3d at 23, the Court interpreted section 523(a)(6), following the Supreme Court interpretation of this section, and held " 'the actor [must] intend the *consequences* of an act, not simply the act itself.' " *Baylis*, *supra*, citing *Kawaauhau*, 523 U.S. at 58, 118 S.Ct. 974. In *Popa*, the Court also citing *Kawaauhau*, *supra*, held "[w]e hold that debts arising from recklessly or negligently in-

flicted injuries do not fall within the compass of § 523(a)(6)." *Popa*, 140 F.3d at 318.

In *Snoke v. Riso (In re Riso )*, 978 F.2d 1151, 1154 (9th Cir.1992), the Court held:

It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6). *See Barbacha-no v. Allen*, 192 F.2d 836, 838 (9th Cir. 1951); *In re Akridge*, 71 B.R. 151, 154 (Bankr.S.D.Cal.1987) (debts that are excepted from discharge under § 523(a)(6) relate solely to tortious liabilities, not debts stemming from breach of contract). An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct. (Citations omitted).

In *Printy v. Dean Witter Reynolds, Inc.*, 110 F.3d 853, 859 (1st Cir.1997), the Court made a detailed analysis of the circuit courts definitions of "willful" and "malicious" in section 523(a)(6). After a thorough analysis, the First Circuit adopted the majority rule followed by the Massachusetts bankruptcy courts, as to the definitions of "malicious" and the term "willful and malicious" in section 523(a)(6). In *Printy*, 110 F.3d at 859, the Court further held:

We adopt the rule of the Massachusetts bankruptcy courts and the further refinement of it in Collier's treatise on bankruptcy:

· · ·

**The malice element of section 523(a)(6) requires an intent to cause the harm, and the fact that the injury was caused through negligence or recklessness does not satisfy that standard of proof.** An injury inflicted willfully and with malice under section 523(a)(6) is one inflicted intentionally and deliberately, and either with the

**26**

intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act. (Emphasis ours).

In the instant case, the record indicates that a gross mismanagement existed in the corporate operations of Lunor, Inc. However, the record is devoid of any proof showing that the disarray in Lunor's finances, and business operations was intended to cause harm to Mitsubishi. "The fact that the injury was caused through negligence or recklessness does not satisfy that standard of proof [in section 523(a)(6) ]." *See Printy,* 110 F.3d at 859. Moreover, the facts and the evidence shows that Lunor, Inc. and Mr. Seda, as a personal guarantor, defaulted the terms and conditions of the dealership contract of December 15, 1995. Consequently, the same was later terminated on July 29, 2002 through a termination letter for breach of contract. *See* Exhibit R. Thus, a breach of contract is not a tortious interference in a contractual relationship. Section 523(a)(6) generally relates to torts, not to "simple breach of contract." *See Riso,* 978 F.2d at 1154. In the instant case, the record is devoid of any proof of a tortious interference.

The Court adopts all the findings of fact and conclusions of law regarding section 523(a)(6).

**E. Discharge Order.**

"Discharge under § 727 is not a right, it is a privilege, and is available only to an honest debtor." *J.P. Morgan Chase Bank, N.A. v. Koss,* 403 B.R. 191, 215 (Bankr.D.Mass.2009), citing *In re Dubrowsky,* 244 B.R. 560, 573 (E.D.N.Y.2000). "In general, the 'fresh start' objective of the Bankruptcy Code has led courts to construe strictly non-dischargeability claims." *In re Spadoni,* 316 F.3d 56, 60 (1st Cir.2003), citing *In re Rembert,* 141

F.3d 277, 281 (6th Cir.), *cert. denied,* 525 U.S. 978, 119 S.Ct. 438, 142 L.Ed.2d 357 (1998). "The reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural." *In re Koss,* 403 B.R. at 211, citing *Dilworth v. Boothe,* 69 F.2d 621, 624 (5th Cir.1934). "A debtor's discharge should not be denied under § 727(a)(4)(A) if the false statement or omission is the result of mistake or inadvertence ... or if the mistake is technical and not real." *Koss,* 403 B.R. at 211, citing *Gordon v. Mukerjee (In re Mukerjee ),* 98 B.R. 627, 629 (Bankr.D.N.H.1989) (citations omitted). The Court further held that, "[r]ather it must be demonstrated by a preponderance of the evidence that (1) the Debtor knowingly and fraudulently made a false oath, (2) relating to a material fact in connection with the case. *Boroff v. Tully (In re Tully ),* 818 F.2d 106, 110 (1st Cir. 1987)." *Id.* "It makes no difference that [a debtor] does not intend to injure his creditors when a false statement is made-'[c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them.' " *Id.,* citing *Chalik v. Moorefield (In re Chalik ),* 748 F.2d 616, 618 (11th Cir.1984).

In the instant case, the Court finds that the discharge of debtor Norberto Seda is warranted, as the record shows that Mitsubishi was unable to present in evidence a written false statement prepared by or signed by debtor Norberto Seda that may constitute actual fraud or show intent to deceive under section 523(a)(2)(A) or (B). Mitsubishi was also unable to specifically describe to the bankruptcy court an act of wherein Mr. Seda "knowingly and fraudulently" made a false oath or intentionally deceit and cause harm to Mitsubishi. *See* Transcript of August 3, 2005 (Docket No. 60–3, pages 433–465, Adv. Proc. No. 03–0060).

### F. *Order* declining to adopt certain findings of fact.

Appellants challenges *Order* (Docket No. 92, Adv. Proc. No. 03–0060), wherein the bankruptcy court adopts certain additional findings of fact and declined to adopt others. This Court agrees with the bankruptcy court and declines to adopt the following additional findings of fact: 5, 6 are already included in the *Opinion and Order* (Docket No. 79, Adv. Proc. No. 03–0060); 8 is a conclusion of law; 10, 11 and 12 constitutes credibility issues which the bankruptcy court may discretionally decline to adopt; 13 and 14 not supported by the evidence found in the record for the requested conclusion; 20 is adopted in the *Opinion and Order*, as the bankruptcy court found that Lunor, Inc. was mismanaged; 25, 26, 28, 29, 30, 31, 32 and 33, as conclusory in nature and/or not sustained by the record. This Court finds that the bankruptcy court ruling does not constitute an abuse of discretion.

### Conclusion

In view of the foregoing, the Court finds that there is no clear error in the findings of fact and conclusions of law made by the bankruptcy court, as well as in the order adopting certain additional findings of fact, and declining to adopt others. Hence, the judgment of the bankruptcy court is affirmed. The instant appeal is now dismissed. Judgment to be entered in conformity to this opinion and order.

IT IS SO ORDERED.