IN RE: Ana Mercedes BARRETO, Debtor.

Edwin Figueroa, Plaintiff.

v.

Ana Mercedes Barreto, Defendant.

**CASE NO.: 12-17964-BKC-PGH**
**ADV. NO.: 12-01582-BKC-PGH-A**

United States Bankruptcy Court, West Palm Beach Division.
**West Palm Beach Division**

Signed July 12, 2013

Angelo A. Gasparri, Esq., Attorney for the Plaintiff.

John M. Cruz, II, Esq., Attorney for the Defendant.

## CHAPTER 7

### *FINDINGS OF FACT & CONCLUSIONS OF LAW*

Paul G. Hyman, Chief Judge, United States Bankruptcy Court

**THIS MATTER** came before the Court for trial on May 29, 2013, upon Edwin Figueroa's (the "Plaintiff") *Complaint to Determine Dischargeability of Debt* (the "Plaintiff's Complaint") against Ana Mercedes Barreto (the "Defendant").

### *PROCEDURAL BACKGROUND*

On August 24, 2012, the Plaintiff filed his *Motion for Summary Judgment* (the "Motion for Summary Judgment") (ECF No. 12). On September 19, 2012, the Defendant filed her *Response to Motion for Summary Judgment (Defendant's Opposition)* (the "Defendant's Response") (ECF No. 16). Pursuant to the *Order Setting Briefing Schedule* (ECF No. 14) on the Plaintiff's Motion for Summary Judgment, the Plaintiff and the Defendant filed a Joint Stipulation of Fact ("J.Stip.") (ECF No. 17). On October 1, 2012, the Plaintiff filed a *Notice of Filing No Reply to be Made to Defendant's Response to Summary Judgment* (ECF No. 18), which simply reaffirmed statements made in the Plaintiff's Motion for Summary Judgment. On November 30, 2013, the Court entered the *Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment* (the "Order Granting Summary Judgment in Part") (ECF No. 24). The Court determined that the debt resulting from the damages associated with both the state court's finding of fraudulent misrepresentation and civil theft is nondischargeable.

Subsequently, the Court held a trial to determine whether the debt resulting from the breach of contract judgment is also nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Court now determines that after considering the evidence presented at trial and the same principles of collateral estoppel utilized when determining the dischargeability of the debt arising from the fraudulent misrepresentation and civil theft damages, the damages associated with the breach of written contract claim are also non dischargeable pursuant to § 523(a)(6).

### *FACTUAL BACKGROUND*

On or about March 4, 2009, the Plaintiff filed an Amended Complaint and Demand for Jury Trial against the Defendant in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida (the "Circuit Court Proceedings"). J. Stip. at

¶ 2.[1] The Amended Complaint contained fourteen counts against the Defendant stemming from a series of events in 2007 that allegedly began with the Defendant's misappropriation of funds from a Washington Mutual Credit Line. Pl.'s Compl. (ECF No. 1). The allegations included a variety of additional willful actions against the Plaintiff, including the theft and conversion of personal property, trespass upon real property, and intentional infliction of damage upon the Plaintiff's real property. *Id.*[2]

The Circuit Court conducted a civil jury trial to resolve the allegations contained in the Plaintiff's complaint. J. Stip. at ¶ 3. During the Circuit Court proceedings, the Defendant's attorney cross-examined witnesses called by the Plaintiff. *Id.* On November 16, 2011, the jury returned a verdict against the Defendant (the "Circuit Court Jury Verdict"). *Id.* at ¶ 4. On the verdict form, the jury answered "yes" to question # 1 which asked, "Did the Defendant, Ana Barreto commit Fraudulent Misrepresentation on the Plaintiff, Edwin Figueroa?" *Id.* at ¶ 5. Additionally, the jury answered "yes" to question # 2 which asked, "Did the Defendant, Ana Barreto commit Civil Theft of the Plaintiff, Edwin Figueroa's property?" *Id.* at ¶ 6. Based on its findings, the jury awarded $827,464.35 in damages to the Plaintiff and against the Defendant. *Id.* at ¶ 7.[3] The Circuit Court then entered an Order consistent with the jury's findings on November 22, 2011 (the "Circuit Court Judgment"). *Id.* at ¶ 8.

On or about December 22, 2011, the Defendant filed a consolidated Motion for New Trial and/or Motion to Alter/Amend Judgment to Deem said Motions timely filed; Alternatively, Motion for Relief from Judgment (the "Circuit Court Motion for New Trial"). *Id.* at ¶ 9. The motion alleged, among other things, that the Defendant's lawyer was incompetent and that there were insufficiencies regarding the trial and the verdict. *Id.* The motion, however, did not mention the Defendant's inability to "offer any evidence at trial" or any other "due process" allegations regarding the trial. *Id.* at ¶ 11.[4] On or about January 5, 2012, the Circuit Court denied the Defendant's Circuit Court Motion for New

1. The case commenced by the Plaintiff against the Debtor in the Circuit Court was styled: Edwin Figueroa v. Ana M. Barreto and Washington Mutual Bank, N.A., Palm Beach County Circuit Court 50 2008 CA 2077MB. J. Stip. at ¶ 2.

2. The Defendant continues to contest the veracity of such assertions.

3. The Defendant also noted the difference between the requested damages and the Circuit Court's Verdict. "The demand in the underlying complaint was for a cash amount of twenty seven thousand four hundred sixty four dollars and 35 cents ($27,464.35) plus five thousand dollars ($5,000.00) for household items allegedly stolen by the Defendant. How that demand turned into a jury verdict of eight hundred twenty seven thousand four hundred sixty four and thirty five cents ($827,464.35) in compensatory damages remains a mystery." The Plaintiff suggests that the award was large because of fringe damages resulting from the Defendant's misconduct. The Plaintiff stated, "The Defendant caused significant damage to the Plaintiff's personal property and home, and left the home in a less than serviceable condition." Pl.'s Motion for Summ. J. (ECF No. 12). The Plaintiff also noted, "Due to the theft or conversion of funds from the original check/credit, the debtor testified that her actions resulted in [the Plaintiff's] inability to fund payments on the mortgage for the home, causing the loss of the home through foreclosure, a negative impact to his credit score and financial health, emotional distress and extensive litigation and professional fees over a number of years." *Id.* The testimony presented at trial was consistent with the foregoing.

4. This is in contrast to the allegations made in the Defendant's Response in the present matter.

Trial. *Id.* at ¶ 10. As a result, the Circuit Court Judgment, based upon the Circuit Court Jury Verdict, became final. *Id.* at ¶ 10. The Defendant failed to file and perfect an appeal of the underlying litigation and has received no other post-judgment relief in the Circuit Court Proceedings. *Id.* at ¶ 12. The dischargeability of the debt owed to the Plaintiff which resulted from the Circuit Court Judgment is at issue in the present matter.

On March 30, 2012, the Defendant filed a voluntary Chapter 7 bankruptcy petition.[5] On June 18, 2012, the Plaintiff instituted this adversary proceeding seeking to determine the dischargeability of the debt owed by the Defendant to the Plaintiff as a result of the Circuit Court Judgment. More specifically, the Plaintiff alleges that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and § 523(a)(6).

### FINDINGS OF FACT

At the May 29, 2013 trial, the Court received into evidence as Exhibit 3 the Plaintiff's Pretrial Stipulation from the Circuit Court Proceedings (the "Circuit Court Pretrial Stipulation"). Ex. 3.[6] The Circuit Court Pretrial Stipulation specifically states that the Plaintiff and the Defendant "jointly file" the Stipulation. The Circuit Court Pretrial Stipulation states:[7] On April 25, 2007, the Plaintiff and the Defendant entered into a written agreement (the "Agreement") to refinance the property located at 3164 Santa Margarita Road, West Palm Beach, Florida (the "Property"). *Id.* at ¶ a. The Agreement

provided in part that funds from the refinancing would be jointly managed by the Plaintiff and the Defendant for the exclusive purpose of paying the mortgage, insurance taxes, association dues, necessary expenses for house repairs, and sale listing fees for the Property. *Id.* at ¶ c. The parties expressly agreed that neither party was to use any of the funds with the other's consent. *Id.* at ¶ d.

On April 25, 2007, the Plaintiff and the Defendant opened a joint checking account number ending in 1357 (the "Joint Account") at Washington Mutual Bank's branch # 1674, located at West Palm Beach–Okeechobee Financial Center. *Id.* at ¶ e. The Joint Account was opened so that the Plaintiff and the Defendant could deposit the proceeds from the refinancing that were to be used to pay the carrying costs of the Property and fulfill the terms of the Agreement. *Id.* at ¶ f.

On April 30, 2007, Nations Title Agency Inc. issued a check in the amount of $27,464.35 in proceeds from the refinancing (the "Check"). *Id.* at ¶ g. On May 2, 2007, the Plaintiff received the Check. *Id.* at ¶ i. The Check was made payable exclusively to the Plaintiff. *Id.* at ¶ h. On the same day, the Defendant and the Plaintiff went to Washington Mutual Bank to deposit the Check in the Joint Account. *Id.* at ¶ i. The Plaintiff and the Defendant met with Washington Mutual Bank's Assistant Financial Center Manager (the "Manager") upon their arrival and explained why they were at the bank. *Id.* at ¶ j-¶ k. Washington Mutual Bank's Manager wit-

---

5. The Chapter 7 Petition can be found in Case No. 12–17964–BKC–PGH at ECF No. 1.

6. The Pretrial Stipulations were also utilized, in large part, as admissions included with the jury instructions for the Circuit Court proceedings. The jury instructions were included in Plaintiff's Exhibit 7, which was also admitted into evidence at the trial.

7. The Circuit Court Pretrial Stipulation is largely cited verbatim with minimal editing to condense where appropriate. The testimony presented at trial by the Plaintiff was consistent with the Stipulation.

nessed the Plaintiff's endorsement of the Check, and then, accompanied only by the Defendant, the Manager and Defendant left the Plaintiff, deposited the Check, and returned to the Plaintiff. *Id.* at ¶ l. The following week, the Plaintiff called Washington Mutual Bank to find out when he would receive checks for the Joint Account. *Id.* at ¶ m. Washington Mutual Bank informed the Plaintiff that it mailed the checks to him and that there was no money as yet in the Joint Account. *Id.* That same day, May 11, 2007, the Plaintiff was leaving on a pre-scheduled vacation, returning on Sunday, May 20, 2007. *Id.* After the Plaintiff returned from his vacation, he went to the bank to find out why the Check funds were not available in the Joint Account. *Id.* at ¶ n. Washington Mutual Bank informed the Plaintiff that the Check was deposited into the Defendant's account number 030800003956434. *Id.* at ¶ o.

Immediately after discovering that the funds had been placed in the Defendant's account, the Plaintiff informed Washington Mutual Bank of the nature of the Check, the purpose of the Joint Account, and the substance of the Agreement. *Id.* at ¶ p. In doing so, the Plaintiff put Washington Mutual Bank on notice that the Check funds were in dispute. *Id.* at ¶ q. Consequently, Washington Mutual Bank gave the Plaintiff a telephone number to call. *Id.* at ¶ r. The Plaintiff made a few calls from the bank in an effort to recover the funds from the Check. *Id.* at ¶ r. Washington Mutual Bank informed the Plaintiff that the best it could do was to "put a freeze" on the contested funds. *Id.* at ¶ s. Later that week, the Plaintiff received Washington Mutual Bank's May 23, 2007 letter signed by Washington Mutual Bank's First Vice-President & Assistant General Counsel, Anabel I. Nemrow. *Id.* at ¶ t–¶ u.[8] The letter proposed an escrow type arrangement in which the funds would remain where they were until the dispute was resolved. *Id.* at ¶ w. In the alternative, the bank stated that it would commence an interpleader action and deliver the funds to the Registry of the Court. *Id.* The letter gave a deadline for the parties to decide their course of action before the bank would commence its interpleader action. *Id.* Nevertheless, the June 8, 2007 deadline came and went without resolution of the dispute between the Plaintiff and the Defendant. *Id.* at ¶ x.

As part of the Defendant's scheme to defraud, sometime between the June 8, 2007 deadline and June 12, 2007, the Defendant, without being authorized, licensed, or invited, willfully entered the Plaintiff's Property. *Id.* at ¶ x. Thereafter, the Defendant entered and remained in the Plaintiff's house, where she willfully and maliciously damaged the Plaintiff's personal property, in which she had no ownership interest. In addition to vandalizing the kitchen counter, the Defendant's burglary and criminal mischief caused damage to the Plaintiff's property in excess of $1,000, including but not limited to fixtures, electrical, plumbing, and flooring damage. *Id.* at ¶ y. In the course of committing grand theft, the Defendant used a pickup truck to haul away the Plaintiff's personal property. *Id.* at ¶ z. The removed, damaged, or destroyed property included: washer ($1,235.38), dryer ($1,038.34), refrigerator ($1,831.78), stove ($1,288.62), light fixtures ($1,248.00), DSL modem ($100.00), kitchen cabinet accessories ($203.00), 3 bathroom towel hangers ($174.00), mirror ($115.99), 2 potted trees ($119.98), tree pots ($149.94), shower rod ($39.99), shower curtain ($9.99), convertible hand truck ($69.00), Victorian hand

---

8. A copy of the letter was also included in exhibit 3, page 707.

showerhead ($44.97), window shades ($3,614.25) and a dishwasher, among other items. *Id.* at ¶ z; ¶ ss. The Defendant wrongfully exercised dominion over the Plaintiff's household items—all inconsistent with the Plaintiff's ownership of said property and done with the intent to permanently deprive him of his right to said property and the beneficial use of it. *Id.* at ¶ qq-¶ ss.

The Defendant knowingly obtained the Plaintiff's property without his knowledge or consent with the clear intent to permanently deprive the Plaintiff of his right to and benefit from his property. *Id.* at ¶ aa. Nevertheless, the Defendant was only getting started. *Id.* at ¶ bb. Notwithstanding the fact that the dispute between the Plaintiff and the Defendant was not resolved, no document signed by either approving a release of funds had been executed or delivered to Washington Mutual Bank, and no Court order providing for the release of funds had been executed or delivered to Washington Mutual Bank, the Bank released the funds to the Defendant without any notice to the Plaintiff. *Id.*[9] The Plaintiff reasonably relied on Ms. Anabel I. Nemrow's written representation that the funds would either remain with Washington Mutual Bank until the dispute was resolved or that Washington Mutual Bank would deliver the funds to the Registry of the Court and proceed with an interpleader action. *Id.* at ¶ ee. As a result, the Plaintiff made a written demand to the Defendant for damages under section 772.11, Florida Statutes by process server on March 10, 2008. *Id.* at ¶ tt. The De-

fendant never made any payment to the Plaintiff pursuant to the demand letter. *Id.*

By signing and feigning entry into the Agreement, the Defendant induced the Plaintiff into endorsing the Check for deposit in the Joint Account. *Id.* at ¶ mm. The Defendant misrepresented her intent to deposit the Check into the Account. *Id.* The Defendant knew the falsity of her representation that she would and did deposit the check into the Joint Account, with the funds to be used as specified in the Agreement. *Id.* at ¶ nn. The Defendant intended that her representations would induce the Plaintiff to rely and act on them. *Id.* at ¶ oo. The Plaintiff suffered injury in justifiable reliance the Defendant's representation. *Id.* at ¶ pp. Further, the Defendant wrongfully exercised dominion over the Check funds. *Id.* at ¶ qq.

The Plaintiff was damaged as a direct result of the Defendant's actions as herein described. *Id.* The Plaintiff lost his money from the Check, he was not able to pay the mortgage on the Property, the lender foreclosed on the Property, and his credit rating has worsened. *Id.* at ¶ gg-¶ jj. The Defendant's improper actions in taking the funds from the Check are the proximate cause of the Plaintiff's inability to pay the $8,552.00 that is owed to Briar Bay Community Association, Inc. *Id.* at ¶ uu. Moreover, as a direct result of the Defendant's actions, the Plaintiff suffered emotional distress. *Id.* at ¶ kk. Additionally,

**9.** Washington Mutual Bank released the funds to the Defendant on or about July 1, 2007, just over 3 weeks after the June 8, 2007 deadline, after which, Anabel I. Nemrow represented in writing that Washington Mutual Bank would proceed with an interpleader action if the Defendant and the Plaintiff did not notify the bank in writing that they resolved their dispute over the Check funds. *Id.* at

¶ dd. Instead of allowing the funds to either remain where they were until the dispute was resolved or delivering the funds to the Registry of the Court as represented in the letter signed by Washington Mutual Banks First Vice President & Assistant General Counsel, Anabel I. Nemrow, Washington Mutual Bank release the check funds to the Defendant. *Id.* at ¶ dd.

the Plaintiff retained Patrick A. Scott, Esq. to seek legal redress for the Defendant's wrongs. *Id.* at ¶ 11.

In the present matter, the Court notes the concerns that were raised in the Defendant's *Notice of Filing Closing Argument* (ECF No. 44). The Court has not considered Exhibit 11 in making these findings of fact since the Court did not receive it into evidence. Moreover, expert testimony is not required regarding the value of losses sustained by the Plaintiff. The jury instructions from the Circuit Court Proceedings and the related Circuit Court Pretrial Stipulation elucidate what the jury's assessment of damages was based upon. Moreover, the testimony offered at trial reaffirms the facts entered into evidence in the state court trial and the Court cannot reevaluate the valuations of damages assessed by the jury in the Circuit Court Proceedings.

### CONCLUSIONS OF LAW

#### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b). This is a core proceeding under 28 U.S.C. § 157.

#### II. The Entire Debt Arising from the Circuit Court Judgment is Nondischargeable

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." The remaining issue before the Court is whether the damages associated with the breach of written contract judgment are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The Court agrees with the Plaintiff that the doctrine of collateral estoppel applies in this matter, and for the reasons discussed below and in the Order

Granting Summary Judgment in Part, finds: (1) the debt in question resulting from the civil theft portion of the Circuit Court Judgment is nondischargeable pursuant to both § 523(a)(4) and § 523(a)(6); (2) the debt resulting from the fraudulent misrepresentation portion of the Circuit Court Judgment is nondischargeable pursuant to § 523(a)(6); and (3) the debt resulting from the breach of contract portion of the Circuit Court Judgment is nondischargeable pursuant to § 523(a)(6) as the evidence at trial proves that the Defendant's breach of contract was inextricably tied with the actions associated with the fraudulent misrepresentation judgment and thus was accompanied by the "willful and malicious conduct" required for nondischargeability.

The doctrine of collateral estoppel or issue preclusion, applies to dischargeability proceedings in bankruptcy courts. *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). "Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a 'full and fair opportunity' to litigate that issue in an earlier case." *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675 (11th Cir.1993) (citing *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). "The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute." *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). "This statute directs a federal court to refer to the preclusion [or collateral estoppel] law of the State in which judgment was rendered." *Id.; see also, Agripost, Inc. v. Miami–Dade County, ex rel. Manager,*

195 F.3d 1225, 1229 n. 7 (11th Cir.1999); *In re Letterese*, 397 B.R. 507, 514 (Bankr. S.D.Fla.2008).

 Because the state court judgment at issue in this case was rendered by a Florida state court, the Court must apply the collateral estoppel law of Florida. Under Florida law, the following elements must be established in order to invoke the doctrine of collateral estoppel:

(1) The issue at stake must be identical to the one decided in the prior litigation;

(2) The issue must have been actually litigated in the prior proceeding;

(3) The prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and

(4) The standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*In re St. Laurent*, 991 F.2d at 676 (citing, *inter alia, Hoskins v. Yanks (In re Yanks)*, 931 F.2d 42, 43 n. 1 (11th Cir. 1991)). Furthermore, Florida adheres to the "mutuality of parties" requirement, so "with limited exceptions . . . collateral estoppel only 'applies when the identical issue has been litigated between the same parties or their privies.'" *Cook v. State*, 921 So.2d 631, 634–35 (Fla. 2d DCA 2005) (citing *State v. McBride*, 848 So.2d 287, 291 (Fla.2003) (internal quotations omitted)).[10]

 Essentially, collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in a state court, but dischargeability remains a legal question properly determined by the bankruptcy court. *In re St. Laurent*, 991 F.2d at 676 (citation omitted). Here, three key

issues were decided by the jury in the Circuit Court Proceedings and memorialized in the Circuit Court Judgment: (1) that the Defendant committed fraudulent misrepresentation on the Plaintiff; (2) that the Defendant committed civil theft of the Plaintiff's property; and (3) that the Defendant breached a written contract with the Plaintiff. The Order Granting Summary Judgment in Part already deemed damages resulting from the fraudulent misrepresentation judgment and the civil theft judgment to be nondischargeable. As such, the Court will only address those judgments as they pertain to the remaining issue—whether the damages associated with the breach of written contract judgment are nondischargeable. As discussed below, the factual findings made by the Circuit Court are directly applicable to the Court's dischargeability analysis.

### a. The Issues at Stake are Sufficiently Identical to the Issues Decided in the Prior Litigation

 "For collateral estoppel purposes, an issue in a dischargeability action is sufficiently 'identical' to an issue in a prior state proceeding if the elements of the issue in the state proceeding 'closely mirror' the requirements for proof in the bankruptcy action." *Budner v. Weiner (In re Weiner)*, 415 B.R. 900, 905 (Bankr. S.D.Fla.2009) (citing *In re St. Laurent*, 991 F.2d at 676). Thus, the Court must determine whether the issues decided in the Circuit Court Proceedings are sufficiently identical to the issues at stake in the Plaintiff's dischargeability action.

 Whether a debt is dischargeable pursuant to 11 U.S.C. § 523(a)(6) is determined by analyzing federal law. *See e.g.,*

---

**10.** Here, the mutuality of parties requirement is uncontested, as both the Plaintiff and the Defendant were parties to the prior litigation.

*J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 800–01 (Bankr.N.D.Ohio 2001) (citing *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866, 870 (Bankr.W.D.Ky.2001); *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 388 (Bankr.N.D.Ohio 1999)). In a § 523(a)(6) action, the Plaintiff must prove that the Defendant acted willfully and maliciously. *See In re Weiner*, 415 B.R. at 905 ("An injury alleged as the basis for a non-dischargeable claim under ... § 523(a)(6) must be both willful and malicious."). The Supreme Court of the United States stated that "[t]he word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Recent decisions ... have found that either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts can establish the requisite intent required by *Geiger*." *Mutual Mgmt. Services, Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 757 (Bankr.N.D.Ill.2010); *see also In re Weiner*, 415 B.R. at 905. Additionally, a showing of malice is required. The legal definition of malice is "a wrongful act, done intentionally, without just cause or excuse." *Tinker v. Colwell*, 193 U.S. 473, 485–86, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

1. *The Fraudulent Misrepresentation Issues & the Breach of Written Contract Issues Decided in the Circuit Court Proceedings are Closely Intertwined and thus are Sufficiently Identical to the Issues at Stake in the § 523(a)(6) Nondischargeability Action*

█ The Circuit Court entered a judgment, based on the Circuit Court Jury Verdict, specifically finding that the Defendant committed fraudulent misrepresentation on the Plaintiff and breached a written contract with the Plaintiff. The Plaintiff's Pretrial Stipulation from the Circuit Court Proceeding makes clear that the Defendant's actions in committing fraudulent misrepresentation and her actions in breaching the Agreement with the Plaintiff were closely intertwined. Moreover, the summary of the claim for fraudulent misrepresentation found in the jury instructions shows the closeness of the two actions. Pl.'s Ex. 7. The summary states, "Plaintiff Edwin Figueroa claims that Defendant Ana Barreto fraudulently misrepresented that she would comply with their [Agreement] and that she would deposit the $27,464.35 into their joint bank account." *Id.*

█ The Circuit Court properly instructed the jury that in order to find that the Defendant was in breach of contract, she must have "failed to perform her [duties] under the contract and ... that failure was a legal cause of damages sustained by Plaintiff Edwin Figueroa." *See* Circuit Ct. Jury Instructions at 19 (ECF No. 21); Pl.'s Ex. 7. In general, the "willful and malicious injury" exception to discharge does not apply when conduct in question involves a breach of contract rather than the commission of a tort. *See* 11 U.S.C. § 523(a)(6); *In re McVay*, 461 B.R. 735 (Bankr.C.D.Ill.2012). More specifically, "an intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct." *GMAC Inc. v. Coley*, 433 B.R. 476, 499 (Bankr.E.D.Pa.2010) (quoting *Mitsubishi Motor Sales of Caribbean, Inc. v. Ortiz*, 418 B.R. 11 (D.P.R.2009) (citations omitted). The Court finds that the intentional breach of contract committed by the Defendant was accompanied by the requisite "malicious and willful tortious conduct" be-

cause of the close association between the judgment for fraudulent misrepresentation and the judgment for breach of contract along with the nucleus of facts surrounding such findings.

In Florida, a finding of fraudulent misrepresentation requires a finding of intent by the Defendant—just as is required for a finding of nondischargeability pursuant to § 523(a)(6).[11] The Circuit Court jury instructions required that the jury find that the Defendant acted intentionally.[12] When considered jointly with the summary of the claim and the Circuit Court Pretrial Stipulation, the finding that the Defendant committed fraudulent misrepresentation proves that the Defendant breached the written contract willfully and maliciously because the actions associated with the fraudulent misrepresentation were directly related to the breach of contract. The summary of the claim for breach of contract contained in the jury instructions states that the "duty of Defendant Ana Barreto under [the Agreement] was to jointly manage funds from the refinancing for purposes and in the manner specified in the [Agreement]. Defendant Ana Barreto agreed that she would not use any of the funds without Plaintiff Edwin Figueroa's consent." Pl.'s Ex. 7.

Moreover, the stipulated facts from the Circuit Court Proceedings tie the fraudulent misrepresentation claim and the breach of contract claim together as one fraudulent plan. The relevant stipulated facts are as follows:

> By signing and feigning entry into the ... Agreement, Defendant Barreto induced Mr. Figueroa into endorsing the Check for deposit in the Joint Account. Defendant Barreto misrepresented her intent to deposit the Check into the Joint Account. Defendant Barreto knew the falsity of her representation that she would and did deposit the Check into the Joint Account, with the funds to be used as specified in the Agreement. Defendant Barreto intended that her representations would induce Mr. Figueroa to rely and act on them.

Pl's Ex. 3. at ¶ mm–¶ oo. Essentially, based on the jury instructions and the Circuit Court Pretrial Stipulation, the Circuit Court jury determined that the Defendant committed a fraudulent misrepresentation in convincing the Plaintiff to enter into a contract with her, which she in turn breached.

In order to establish that a debt is nondischargeable pursuant to § 523(a)(6),

---

**11.** The Florida Supreme Court recently held "there are four elements of fraudulent misrepresentation: '(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation.'" *Butler v. Yusem*, 44 So.3d 102, 105 (Fla.2010) (quoting *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985)).

**12.** The Circuit Court jury was required to adhere to Florida law on fraudulent misrepresentation and the jury was properly instructed on the law. The jury found: (1) the "Defendant Ana Barreto [intentionally] made a false statement concerning a material fact;" (2) the

Defendant "knew that the statement was false when she made it or made the statement knowing she did not know whether it was true or false;" (3) the Defendant "intended that another would rely on the false statement;" and (4) that the "Plaintiff Edwin Figueroa relied on the false statement." Circuit Ct. Jury Instructions at 10 (ECF No. 21). Although the second element of the jury instructions regarding fraudulent misrepresentation seems to indicate that recklessness would be enough, when read with the other requirements, it is clear that the jury found that the Defendant acted intentionally when making a false misrepresentation and intended that the Plaintiff rely on such false misrepresentation.

"[a]n injury alleged as the basis for a non-dischargeable claim under ... § 523(a)(6) must be both willful and malicious." *In re Weiner*, 415 B.R. at 905. As discussed above, the Supreme Court of the United States held that "[t]he word 'willful' in [§ 523](a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Geiger*, 523 U.S. at 61, 118 S.Ct. 974. In other words, in order "to meet the 'willful' requirement under § 523(a)(6) a plaintiff is required to show either: (a) the defendant 'subjectively intended the harm that resulted' or (b) the defendant 'acted intentionally and the act in question was certain or substantially certain to result in the injury.'" *Duran v. Antonini (In re Antonini)*, 2011 WL 5593157, at *1 (Bankr.S.D.Fla. Oct. 26, 2011) (quoting *Drewes v. Levin (In re Levin)*, 434 B.R. 910, 918–19 (Bankr S.D.Fla.2010)). The jury instructions required that the jury find that the Defendant intended to make a false statement and that the Defendant intended that the Plaintiff rely on the Defendant's false statement. As such, the issue at stake in the Circuit Court Proceedings regarding intent to commit fraudulent misrepresentation and breach of contract is sufficiently identical to the willfulness requirement for nondischargeability pursuant to § 523(a)(6).

▇▇▇ In addition to the willfulness requirement, the Plaintiff must also prove that the Defendant acted with malice in order for the debt resulting from a finding of fraudulent misrepresentation to be non-dischargeable pursuant to 523(a)(6).[13] The legal definition of malice is "a wrongful act, done intentionally, without just cause or excuse." *Tinker v. Colwell*, 193 U.S. 473, 485–86, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *see also, Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir.1995); *John B. Stetson University v. Hunt*, 88 Fla. 510, 102 So. 637, 639 (1925); *Kroll v. Lamberti*, 2010 WL 3119204, at *6 (S.D.Fla. Aug. 6, 2010). "Malice can be implied ... 'even in the absence of personal hatred, spite or ill-will.'" *Thomas v. Loveless (In re Thomas)*, 288 Fed.Appx. 547, 549 (11th Cir.2001) (quoting *Walker*, 48 F.3d at 1164 (internal citations and quotation marks omitted)).

In a similar case, the Ninth Circuit concluded that a state court judgment for fraudulent misrepresentation necessarily included the essential element of "willful and malicious" injury for the § 523(a)(6) claim because "[i]n order to find fraud, the jury had to determine that there was intentional tortious conduct." *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 828 (9th Cir.2002); *see also In re Kim*, 2003 WL 22939483, at *5 (Bankr.D.Haw. Jan. 10, 2003) (finding that the state court

---

**13.** Based on the Supreme Court's holding in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), several courts have eliminated the requirement of a separate inquiry into whether an injury was caused maliciously, finding that malice is implied when a court determines that the injury was caused willfully. *See, e.g., Williams v. Int'l Bhd. of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 509 (5th Cir.2003) (holding that "[t]he test for willful and malicious injury under Section 523(a)(6) ... is condensed into a single inquiry of whether there exists 'either an objective substantial certainty of harm or a subjective motive to cause harm' on the part of the debtor"). However, many courts, including courts in the Eleventh Circuit, continue to treat the "willful" and "malice" prongs as distinct elements that must be separately established. *See, e.g., In re Quarterman*, 2010 WL 4642471, at *5 (Bankr.N.D.Ga.2010); *Goodstein Realty Boca Raton, LLC v. Gelinas (In re Gelinas)*, 2008 WL 5640701, at *5 (Bankr.S.D.Fla. 2008). Therefore, in addition to satisfying the "willful" prong of 11 U.S.C. § 523(a)(6), the Plaintiff must also satisfy the "malice" prong of § 523(a)(6).

judgment for intentional misconduct against a debtor prevented him from relitigating the issue of "willful and malicious injury"). As noted above, the jury found that the Defendant acted intentionally to commit fraud and thus, malice can be implied. As a result, the issues decided in the Circuit Court Proceedings are sufficiently identical to the issues at stake in a § 523(a)(6) nondischargeability action.

### b. Mutuality of Parties Exists

■■■ "Florida has traditionally required that there be a mutuality of parties in order for the doctrine [of collateral estoppel] to apply." *E.C. v. Katz*, 731 So.2d 1268, 1269 (Fla.1999) (citing *Stogniew v. McQueen*, 656 So.2d 917, 919 (Fla.1995) (internal citations omitted)); *see also Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1332 (11th Cir.2003). This means that "unless both parties are bound by the prior judgment, neither may use it in a subsequent action." *Id.* (citing *Stogniew*, 656 So.2d at 919). The mutuality of the parties requirement is not contested here as the parties involved in this adversary proceeding are identical to the parties involved in the Circuit Court Proceedings. Thus, both parties are bound by the prior judgment, and the mutuality of parties requirement is satisfied.

### c. The Circuit Court Judgment was Actually Litigated

■■■ "Under Florida law[,] collateral estoppel, or issue preclusion, applies when 'the identical issue has been litigated between the same parties or their privies.'" *City of Oldsmar v. State*, 790 So.2d 1042, 1045 n. 4 (Fla.2001) (citing *Gentile v. Bauder*, 718 So.2d 781, 783 (Fla.1998)). "An issue is considered actually litigated when the issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1267–68 (11th Cir.2011) (internal citations and quotations omitted); *see also, Manucy v. Hartman (In re Hartman)*, 274 B.R. 911, 915 (Bankr.M.D.Fla.2002) (citing *Melnick v. Seifert (In re Seifert)*, 130 B.R. 607, 609 (Bankr.M.D.Fla.1991)) (stating that the phrase "actually litigated" means that "the defendant has been given a full opportunity to defend himself).

■■■ In the present matter, the Defendant contends that there is a material issue of fact as to whether the Defendant received due process in her state court action.[14] Nevertheless, the Defendant stipulated to the fact that she had the opportunity to cross examine witnesses. While her ability to present evidence was limited, the limitation was the result of discovery

---

**14.** More specifically, the Defendant contends that "[b]ecause of alleged discovery violations on the part of her attorney at the time, the Judge in the state court proceeding entered an order striking the Defendant's pleadings and prohibiting her from presenting any evidence at trial. Therefore, she never received her day in court." Def's Resp. However, this argument does not take into account the fact that the Defendant had an opportunity to litigate, but violated the rules of discovery. As noted by the Eleventh Circuit:

> Collateral estoppel applies only to those issues that were "actually" or "fully" litigated in the prior action. However, this rule does not refer to the quality or quantity of

argument or evidence addressed to an issue. It requires only two things: first, that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion; and second, that the losing party have had "a fair opportunity procedurally, substantively and evidentially" to contest the issue.

*Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995) (quoting *Overseas Motors, Inc. v. Import Motors Ltd.*, 375 F.Supp. 499, 516 (E.D.Mich.1974), *aff'd*, 519 F.2d 119 (6th Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 395, 46 L.Ed.2d 304 (1975)).

sanctions imposed by the Circuit Court.[15] The Defendant had the ability to fully participate in the litigation, but simply failed to do so because of her refusal to comply with the rules of discovery. Thus, the Circuit Court Proceedings were "fully litigated" for purposes of collateral estoppel, and the Defendant will not be permitted a "second bite at the apple." [16]

### d. The Relevant Issues were "Critical and Necessary" to the Prior Judgment

 In order to apply the doctrine of collateral estoppel to bar the relitigation of an issue, the determination of that issue must have been "critical and necessary" to the prior judgment. "The 'necessarily decided' prong of the collateral estoppel test ensures that the prior court actually ruled on the issue at hand. The issue must have been squarely addressed, or 'directly decided,' in the former suit before it can be held as conclusive for subsequent litigation." *Strong*, 651 F.3d at 1268. While there is little authority on the meaning of critical and necessary, "[s]ome courts have spoken in terms of whether a particular issue was 'essential' to the prior court's ultimate determination. If the issue was not 'essential' to the court's final action, it should not be used for purposes of collat-

eral estoppel." *Dimmitt & Owens Fin., Inc. v. Green (In re Green)*, 262 B.R. 557, 565 (Bankr.M.D.Fla.2001) (citing *Porter v. Saddlebrook Resorts, Inc.*, 679 So.2d 1212, 1215 (Fla. 2d DCA 1996)).

Here, the Circuit Court specifically found that the Defendant was liable for fraudulent misrepresentation, breached a contract with the Plaintiff, and committed civil theft of the Plaintiff's property. Each of these findings was essential to the Circuit Court Judgment. Moreover, the facts contained in the Circuit Court Pretrial Stipulation went directly to those findings. Thus, the relevant issues were critical and necessary to the Circuit Court Judgment.

### e. Standard of Proof at Least as Stringent

 The standard of proof in a fraud action is the preponderance or greater weight of the evidence. *See Wieczoreck v. H & H Builders, Inc.*, 475 So.2d 227 (Fla.1985); *Passaat, Ltd. v. Bettis*, 654 So.2d 980 (Fla.Dist.Ct.App. 4th Dist. 1995); *Powerhouse, Inc. v. Walton*, 557 So.2d 186 (Fla.Dist.Ct.App. 1st Dist.1990). The "greater weight of the evidence" standard was used, and met, in the Circuit Court Proceedings for both the fraudulent misrepresentation claim and the breach of

---

**15.** "A number of bankruptcy courts have given preclusive effect in a dischargeability proceeding to a prior default judgment." *In re Bush*, 62 F.3d at 1324. (citing *e.g., In re Seifert*, 130 B.R. 607, 609 (Bankr.M.D.Fla.1991); *In re Austin*, 93 B.R. 723 (Bankr.D.Colo. 1988); *In re Wilson*, 72 B.R. 956, 959 (Bankr. M.D.Fla.1987); *In re Eadie*, 51 B.R. 890 (Bankr.E.D.Mich.1985). These courts have reasoned that:

'Debtor/defendant was given the full opportunity to defend himself in the [prior] action and he chose not to do so. Debtor/defendant could have reasonably foreseen the consequences of not defending an action based in part on fraud. It would be undeserved to give debtor/defendant a second

bite at the apple when he knowingly chose not to defend himself in the first instance.' *Id.* (citing *In re Wilson*, 72 B.R. at 959).

**16.** If the Court were to explore the issue of whether the Circuit Court discovery sanctions were proper, it would effectively be reviewing the correctness of the state court decision. This Court does not have jurisdiction to act as an appellate court for state court decisions. "According to the Rooker–Feldman doctrine, 'a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" *Powell v. Powell*, 80 F.3d 464, 466 (11th Cir.1996) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)).

contract claim. *See* Circuit Ct. Jury Instructions at 6–7, 10–11, 19–20 (ECF No. 21). The standard of proof in a civil theft action—clear and convincing evidence—is even greater. *Stein v. Miller Indus., Inc.,* 564 So.2d 539, 540 (Fla. Dist. Ct.App. 4th Dist. 1990). The jury in the Circuit Court Proceedings found that the clear and convincing standard was met as to the civil theft claim. *See* Circuit Ct. Jury Instructions at 14–18 (ECF No. 21). "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan,* 498 U.S. at 291, 111 S.Ct. 654, 112 L.Ed.2d 755. Therefore, the standard of proof for each claim in the Circuit Court Proceedings was identical to or greater than the standard of proof in the dischargeability actions currently before the court.

### f. Collateral Estoppel Applies to Render Nondischargeable the Debts Allocable to the Civil Theft, Fraudulent Misrepresentation, and Breach of Contract Judgments

The Court noted in the Order Granting Summary Judgment in Part that the damages associated with the breach of contract claim would also be nondischargeable if they were part of one scheme to defraud. As noted in the Order Granting Summary Judgment in Part, civil theft and fraudulent misrepresentation qualify as "malicious and willful tortious conduct." The Court could not grant summary judgment based on the limited findings in the Circuit Court Jury Verdict, but after reviewing the exhibits presented at trial along with the testimony offered, the Court determines that the conduct associated with the breach of contract claim was inextricably tied to the conduct associated with the fraudulent misrepresentation claim.[17] As such, the breach of contract claim was accompanied by the willful and malicious conduct required for a finding of nondischargeability under § 523(a)(6). An allocation of the damages to each segment of the judgment is unnecessary because all of the damages are nondischargeable. The testimony presented at trial along with the relevant exhibits make clear that the amount awarded in the Circuit Court Judgment was meant to compensate the Plaintiff for losses sustained as a direct result of the Defendant's fraudulent misrepresentation, civil theft, and breach of

---

**17.** The Court has jurisdiction to make such a review. The Bankruptcy Court for the Central District of California, when faced with a similar situation, stated:

> This is a bankruptcy case. Bankruptcy is an independent basis for federal jurisdiction with consequences far beyond the results of a single state court lawsuit. By filing a bankruptcy case, a debtor submits all of the debtor's assets (except those that are exempt from execution under state law) to the bankruptcy court for distribution to creditors, and submits all of the debts owing to creditors to the administration of the court.

*Nevens v. Chung (In re Chung),* 334 B.R. 271, 274 (Bankr.C.D.Cal.2005). In *Chung,* the court determined that it had jurisdiction to determine how much of a damages award was a result of a nondischargeable fraud judgment and how much qualified as dischargeable foreclosure damages. *Id.* In making such a determination in the present matter, the Court looks to the transcript from the trial, the jury verdict form, and the undisputed facts from the Circuit Court trial. *See Keever v. Gallagher (In re Gallagher),* 2011 WL 1130878, at *5 (W.D.N.C. March 25, 2011) (noting that the preferential method for the bankruptcy court to determine how to apportion damages is by reviewing a special verdict form and a transcript of the trial). A transcript from the Circuit Court trial was not entered into evidence, thus the Court relies on the Circuit Court Pretrial Stipulation and other exhibits presented at trial along with the testimony of the parties.

contract with the Plaintiff.[18]

### III. *Conclusion*

For the reasons discussed above, the Court finds that the debts arising from the civil theft, fraudulent misrepresentation, and breach of written contract judgments are all nondischargeable.

### ORDER

The Court, being fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The debt allocable to the Circuit Court Judgment holding the Defendant liable for civil theft is **NONDISCHARGEABLE** pursuant to § 523(a)(4) and § 523(a)(6).

2. The debt allocable to the Circuit Court Judgment holding the Defendant liable for fraudulent misrepresentation is **NONDISCHARGEABLE** pursuant to § 523(a)(6).

3. The debt allocable to the Circuit Court Judgment holding the Defendant liable for breach of contract is **NONDISCHARGEABLE** pursuant to § 523(a)(6).

4. As a result of the Court's findings, the entire Circuit Court Judgment of $827,464.35 is **NONDISCHARGEABLE**.

5. The Court shall enter a Final Judgment contemporaneously herewith.

6. After entry of the Final Judgment, the Clerk is hereby directed to close the case.

**ORDERED in the Southern District of Florida on July 12, 2013.**

18. The Defendant contended in her Answer that the award was for far more than the damages initially requested in the Circuit Court litigation and thus the Plaintiff will be unjustly enriched in the verdict stands. Def.'s Answer at ¶ 4. As discussed above, the Court cannot reevaluate the jury's award. Such an argument is inappropriate before this Court because the Court is not an appeals court for state court judgments. Further, the testimony presented at trial and the exhibits show that the jury had a logical basis for making such an award and the damages are directly attributable to the Defendant's conduct in committing civil theft, making a fraudulent misrepresentation, and in breaching the contract with the Plaintiff.